IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CX REINSURANCE COMPANY LIMITED, f/k/a CNA REINSURANCE COMPANY LIMITED, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H – 03 – 4147 |
| TECHNICAL CONSTRUCTION SERVICES, INC., RAUL F. RIVAS, and ARC SERVICES LC d/b/a ALLIED CONSTRUCTION SERVICES, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The parties have filed cross-motions for summary judgment. As a preliminary matter, Defendant ARC Services LC d/b/a Allied Construction Services ("Allied") has filed a Motion for Leave to Supplement the Summary Judgment Record (Doc. #36); the Motion is **GRANTED**. The parties have also submitted supplemental briefs with respect to the summary judgment motions. The Court considers all of the parties' filings and arguments at the two status conferences in deciding the summary judgment motions.

**I.   BACKGROUND**

This is an insurance coverage dispute. Plaintiff CX Reinsurance Company Limited ("CX Re") brought this action against Defendants Technical Construction Services, Inc. ("TCSI"), Raul F. Rivas, and Allied, seeking a declaratory judgment that it is not obligated to provide coverage under a commercial general liability policy for bodily injuries suffered by Herminio Serrano ("Serrano") while working on a roofing project.

CX Re issued a commercial general liability policy (the "Policy") to TCSI with an effective date from February 14, 1998 to February 14, 1999. TCSI, the named insured under the Policy, was in the business of providing roofing work on construction projects. Rivas, the president and owner of TCSI, is also an insured under the Policy. A provision of the Policy that is particularly relevant to this case is the Independent Contractors' Employees or Leased Workers Exclusion, which states:

> This insurance does not apply to "Bodily Injury", "personal injury", "advertising injury", to: [] Any employee or leased worker of independent contractors arising out of operations performed for you by said independent contractors or your acts or omissions in connection with general supervision of such operations if you have rejected the obligations of any workers' compensation or any similar law, or abrogated, waived or otherwise set aside common rights or defenses generally accorded any employer under any workers' compensation, disability benefits or unemployment compensation law or any similar law . . . .[1]

On May 7, 1998, TCSI and Allied entered into a subcontract agreement (the "Allied Contract") covering the roofing work to be done on a new apartment construction project (the "Project") in which Allied was the general contractor. Pursuant to the Allied Contract, TCSI agreed to indemnify Allied for Allied's own negligence in operations performed under the Allied Contract. The Allied Contract is an "insured contract" within the meaning of the Policy. The Allied Contract required TCSI and all of its lower-tier subcontractors to procure the following insurance: workmen's compensation-employer's liability, comprehensive general public liability, contractual liability, and comprehensive automobile liability. TCSI was responsible for ensuring that its subcontractors carried this insurance coverage and was required to provide Allied proof thereof.

TCSI subcontracted 100% of the roofing labor work on the Project to Nicholas Quintanilla, an independent roofing subcontractor. TCSI had subcontracted roofing labor work

---

[1] Pl.'s Mot. for Summ. J., Ex. A at CX RE 00024 (Policy Exclusion No. CNA006).

to Quintanilla on other projects and had a standing contract with Quintanilla dated June 23, 1997, which applied to all roofing labor subcontracted by TCSI to Quintanilla (the "Quintanilla Contract"). The Quintanilla Contract required Quintanilla to provide TCSI with a copy of his workers' compensation insurance certificate or a signed copy of a workers' compensation form indicating that Quintanilla holds TCSI harmless, and that TCSI "will not pay insurance premiums for coverage to the independent contractor or the independent contractor's employees, helpers or subcontractors." Pl.'s Mot. for Summ. J. at 5. Quintanilla did not carry workers' compensation insurance, and accordingly, Quintanilla and TCSI executed the workers' compensation form in which they declared and affirmed: (1) the independent contractor relationship between Quintanilla and TCSI; (2) that Quintanilla and his employees would not be entitled to workers' compensation coverage from TCSI; and (3) that TCSI's workers' compensation insurance carrier would not require TCSI to pay premiums for coverage of Quintanilla, or his employees, helpers, or subcontractors. The Quintanilla Contract also included safety requirements for Quintanilla and his employees. TCSI paid Quintanilla a flat fee for the roofing labor, and Quintanilla was in turn responsible for paying his roofing workers.

On July 15, 1998, Herminio Serrano ("Serrano"), one of the roofing workers, was injured when he fell from the roof while working on the Project. Zoila Serrano, as next friend of Serrano, filed suit against Allied, TCSI, Rivas, and Quintanilla in state court (the "*Serrano* suit"). The claims in the *Serrano* suit allege that the defendants were negligent by: (1) failing to provide Serrano with a safe workplace; (2) failing to provide and implement adequate safety procedures; (3) failing to provide adequate fall protection; and (4) failing to comply with OSHA regulations.

Allied and TCSI tendered the claims in the *Serrano* suit to CX Re under the Policy. Allied also tendered the claims to its commercial general liability carrier, Mid-Continent Casualty Group ("Mid-Continent"). Mid-Continent retained counsel for Allied in the *Serrano* suit. CX Re retained counsel for Technical and Rivas, but advised them that CX Re had agreed to provide a defense subject to a reservation of rights. CX Re sent a similar reservation of rights letter to Mid-Continent.

CX Re's counsel proposed to withdraw CX Re's reservation of rights as to Allied, and instructed Allied to turn over defense of the case to an attorney selected by CX Re. Allied's counsel refused, and stated that if CX Re would allocate a portion of the Policy limits to Allied, then Allied might agree to transfer the case. CX Re rejected the condition and the case was never transferred. The *Serrano* suit is still pending. The attorney retained by Mid-Continent has continuously represented Allied in the *Serrano* suit, while CX Re has continuously provided a defense to TCSI and Rivas. CX Re has also paid all defense costs submitted by Allied in the *Serrano* suit.

CX Re filed suit in this court seeking a declaration that coverage is unavailable to Defendants under the Policy based on the independent contractor employee exclusion. Defendants asserted the defenses of waiver, estoppel, laches, and ambiguity.[2] Defendants also filed a counterclaim seeking a declaration that coverage is available under the Policy, and asserted a claim for violation of Article 21.55 of the Texas Insurance Code (Prompt Payment of Claims). All parties have filed a motion for summary judgment.

---

[2] Allied had originally argued that CX Re waived its right to assert any Policy defenses regarding Allied in the *Serrano* suit. Allied conceded, however, that CX Re neither assumed the defense of Allied in the *Serrano* suit, nor harmed Allied with its proposal to withdraw its reservation of rights; therefore the waiver defense fails. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways*, 964 F.2d 478, 481 n.11 (5th Cir. 1992) (stating that when an insured relies upon "the doctrine of waiver to challenge the non-coverage defense of its insurer, courts generally require a showing that the insurer's assumption of its insured's defense without reserving its rights harmed the insured.").

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations and citations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

If a party fails to prove an essential element of its case, then all other facts are necessarily rendered immaterial and summary judgment must be entered for the opposing party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the opposing party shows that there is a lack of evidence to support a party's case, that party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation and citation omitted).

## III.    ANALYSIS

Texas rules of contract interpretation apply in this diversity case. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). The interpretation of insurance contracts is governed by the same rules that apply to contracts generally. *Id*. "The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Id*.

When considering a motion for summary judgment in a case involving the construction of an insurance policy, the Court must determine whether the policy terms are ambiguous; this determination is a question of law. *Id*. A policy is ambiguous if it can reasonably be interpreted to have different meanings. *Id*. An ambiguity does not arise, however, simply because the parties provide conflicting interpretations. *TIG Specialty Ins. Co. v. Pinkmonkey.com, Inc.*, 375 F.3d 365, 370 (5th Cir. 2004). "When the terms of an insurance policy are clear and unambiguous a court may not vary those terms." *Canutillo*, 99 F.3d at 700. Under Texas law, an insurer has the burden of proving the applicability of any exclusion in the insurance policy. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). If the insurer proves that an exclusion applies, the burden shifts to the insured to show that the claim falls under an exception to an exclusion. *Id*.

### A.     The Parties' Positions

CX Re seeks a declaration that coverage is unavailable to Defendants under the Policy because the claims in the *Serrano* suit unambiguously fall under the independent contractor employee exclusion. It argues that TCSI retained Quintanilla, an independent contractor, to perform the roofing labor work and Quintanilla hired Serrano as a roofing laborer; therefore, Serrano is an employee of an independent contractor performing operations for TCSI, for whom the Policy does not provide coverage for bodily injury.

Defendants, on the other hand, argue that Serrano was not an employee of Quintanilla, but rather a "temporary worker" and as such, falls outside of the independent contractor employee exclusion. Defendants emphasize that the exclusion applies "to any employee or leased worker of independent contractors," but makes no reference to a "temporary worker." Defendants support their argument by indicating that the Definitions Section of the Policy

defines a "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions," and defines "employee" to include a "leased worker," but states that it does not include a "temporary worker." Pl.'s Mot. for Summ. J., Ex. A at CX RE 00018 and 00020. Given that the roofing project was short-term and Serrano was not a permanent employee of Quintanilla, Defendants argue that Serrano was a "temporary worker."

### B. *U.S. Underwriters Insurance Co. v. Congregation Kollel Tisereth, Tzvi*

The disagreement between the parties is extremely similar to a case decided last year in the Eastern District of New York, which this Court finds highly instructive. In *U.S. Underwriters Insurance Co. v. Congregation Kollel Tisereth, Tzvi*, the insurance company issued a commercial general liability policy to the Congregation Kollel Tisereth, Tzvi (the "Congregation"). 2004 WL 2191051 (E.D.N.Y. Sept. 30, 2004). The policy, like the Policy in question, contained an exclusion for injuries to employees, contractors, and employees of contractors. The policy also contained an exclusion for injuries arising out of operations performed for the insured by any independent contractors.

The Congregation hired Empire Concrete and Construction ("Empire"), an independent contractor, to perform certain demolition and renovation work at the premises. Empire retained Ramon Acosta to do the demolition work; Acosta had a crew of workers who performed the work. One of the workers, Demetrio Meneses, was injured on the premises when a wall collapsed. Meneses filed a lawsuit in state court against the Congregation, and the Congregation sought coverage for the state court litigation under the commercial general liability policy.

U.S. Underwriters subsequently filed an action in federal court seeking a declaration that it was not obligated to defend and indemnify the Congregation with respect to Meneses' personal

7

injury suit because the claims fell within the contractor employee exclusion. The Congregation raised the same argument that Defendants advance here, that Meneses was not covered by the exclusion because he was a "temporary worker" since the project was short term and he was not a permanent employee of Empire. The policy in *U.S. Underwriters* and the Policy in this case contain identical definitions of "employee," "leased worker," and "temporary worker."

The court granted summary judgment in favor of U.S. Underwriters, concluding that the state court claims fell within the contractor employee exclusion. The court rejected the Congregation's argument that "temporary workers" are not "employees," stating:

> The Congregation's argument that "temporary workers" are not "employees" and therefore remain outside the scope of the policy's exclusionary language is not persuasive for several reasons. First, the policy specifically provides that "words and phrases that appear in quotation marks have special meaning," and refers the reader to the Definitions Section ("Section V") for definitions of those words and phrases with "special meaning." However, in the employee injury exclusion, the word – employee – is not enclosed in quotation marks, capitalized, or otherwise distinguished in a manner which directs the reader to Section V of the policy. As such, the term "temporary worker" is not encompassed by the term employee as it appears in the exclusion. Furthermore, the term "temporary worker" appears nowhere in the exclusion itself. We are thus left with the task of applying to the present record "the plain, ordinary, and common meaning" of the word employee. In doing so, we find that Meneses was clearly employed by Acosta in exchange for monetary compensation, and that Acosta was sub-contracted to perform demolition work by Empire, an independent contractor who was retained by the Congregation.
>
> Second, even if the definitions of "employee" in Section V referring to "temporary worker" were imported into the employee injury exclusion, Meneses' incident would still be excluded from coverage. The definition of "temporary worker" states: "a person who is furnished to *you* to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." The policy makes it clear from the outset that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations . . . ." The record shows that Meneses was not furnished to the Congregation to substitute for a permanent employee on leave or to meet the Congregation's seasonal or short-term workload conditions; rather, Meneses was employed by Acosta, who in turn was retained by Empire Concrete to perform the demolition work on the Congregation's property.

>       Meneses' claim for personal injury is therefore excluded from coverage under plaintiff's policy since he incurred his alleged injuries in the course of his employment with a contractor of the Congregation, the insured entity.

*Id*. at *5-6 (citations omitted).

### C.      Parallel Policies

The reasoning in *U.S. Underwriters* applies with equal force to this case. As with the policy in *U.S. Underwriters*, the Policy specifically provides that "words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V)." Pl.'s Mot. for Summ. J., Ex. A at CX RE 00011. Similarly, the word – employee – in the independent contractor employee exclusion is not enclosed in quotation marks and the term "temporary worker" does not appear in the exclusion. Accordingly, the term "temporary worker" within the defined term "employee" is not included or encompassed by the independent contractor employee exclusion in the Policy, and the Court must apply the plain and ordinary meaning of the word employee to the facts of this case. The summary judgment evidence demonstrates that Serrano was clearly employed by Quintanilla, who hired him to perform roofing work in return for monetary compensation.

Moreover, as discussed in *U.S. Underwriters*, even if the "temporary worker" exception applied to the exclusion, Serrano was not furnished to TCSI, the named insured. Again, the Policy's definition of "temporary worker" is identical to the one in *U.S. Underwriters*, and similarly defines "you" and "your' as "the Named Insured shown in the Declarations . . . ." *Id*. Serrano was hired on the Project by Quintanilla, an independent contractor of TCSI. Serrano was not furnished to TCSI or Allied to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions, and therefore could not have been a "temporary worker" under the Policy.

Accordingly, Serrano's claims for personal injury are excluded from coverage under the Policy because he incurred his alleged injuries in the course of his employment with Quintanilla, a subcontractor of TCSI, the insured entity.

## IV. CONCLUSION

All of the claims in the *Serrano* suit fall within the independent contractor employee exclusion, and therefore coverage is unavailable to Defendants under the Policy. CX Re's Motion for Summary Judgment (Doc. #28) and Supplemental Motion for Summary Judgment (Doc. #54) are **GRANTED**. TCSI's Motion for Summary Judgment (Doc. #26) and Allied's Motion for Summary Judgment (Doc. #27) are **DENIED**.

IT IS SO ORDERED.

SIGNED this 18th day of August, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**